**EXECUTIVE COACH BUILDERS, Appellant,**

**v.**

**BUSH & COOK LEASING, INC., Appellee.**

[Cite as *Executive Coach Builders v. Bush & Cook Leasing, Inc.* (1992), 81 Ohio App.3d 808.]

Court of Appeals of Ohio,
Clinton County.

No. CA91–12–028.

Decided July 20, 1992.

*David Mack Fife* and *Elaine H. Fife*, for appellant.

*Buckley, Miller & Wright* and *James P. Miller*, for appellee.

WILLIAM W. YOUNG, Judge.

Plaintiff-appellant, Executive Coach Builders, appeals a decision denying its replevin action which sought to recover possession of its limousine and ordering it to deliver the limousine's statement of origin to defendant-appellee, Bush & Cook Leasing, Inc.

Appellant is a manufacturer/seller of customized limousines. In 1988, appellant entered into an agreement with Gold Key Limousine, Inc., whereby Gold Key agreed to purchase certain limousines from appellant. Gold Key, a limousine service organization, franchises Gold Key Limousine Service to individuals who are planning to enter the limousine business. Gold Key's operation includes putting individuals planning to open a limousine franchise in touch with a leasing agent and arranging the financing and leasing of limousines.

In early 1989, appellee entered into a business arrangement with Gold Key whereby Gold Key agreed to find a franchisee to whom appellee could lease a limousine. Pursuant to the agreement, Gold Key located Royce Mason ("Mason") as a franchisee. As a consequence, appellee agreed to purchase a

limousine from Gold Key. On March 23, 1989, Gold Key placed an order with appellant for the construction of a limousine. Gold Key's cost for the limousine was $39,200. Gold Key in turn contracted to sell the limousine to appellee for $57,645, and appellee arranged to lease the vehicle to Gold Key's franchisee, Mason. On May 5, Mason picked the vehicle up at appellant's place of business in Springfield, Missouri.

Gold Key subsequently notified appellee that the vehicle had been delivered and that Mason was in possession of the limousine. Gold Key then telefaxed appellee an invoice specifying the price of the vehicle and the terms of the sale. After appellee was assured that Mason had possession of the limousine, appellee issued a check to Gold Key in the amount of $57,645 on May 12, 1989. Gold Key, however, failed to pay appellant the $39,200 purchase price.

Having not received payment for the vehicle, appellant decided that it was in their best interest not to furnish the manufacturer's statement of origin to appellee. Since appellee did not have the statement of origin in its possession, it could not properly license the limousine. Consequently, Mason rescinded his lease with appellee.

On December 7, 1989, appellant brought a replevin action in the Clinton County Court of Common Pleas seeking to recover possession of the limousine from appellee. On December 22, 1989, appellee filed its answer and counterclaim seeking a dismissal of the complaint, transfer of the statement of origin to it and damages. On November 21, 1991, the trial court issued a decision dismissing appellant's replevin action and ordering appellant to deliver the manufacturer's statement of origin to appellee. The court also ordered that the matter be set for a hearing on the alleged damages incurred by appellee. From that decision, appellant has filed this timely appeal asserting the following three assignments of error:

Assignment of Error No. 1:

"The trial court erred when it applied the provisions of Chapter 1302.44(B), ORC in determining ownership of an automobile in preference to the Ohio certificate of title law."

Assignment of Error No. 2:

"The trial court erred when it found that appellant 'entrusted' the limousine to Gold Key."

Assignment of Error No. 3:

"The trial court erred when it ordered appellant to convey title to appellee."

Since the assignments raise the same error, they will be considered together.

At issue is the apparent conflict between the provisions of the Ohio Certificate of Motor Vehicle Title Act (R.C. 4505.01 *et seq.*) and the entrustment section of the Uniform Commercial Code ("UCC") found at UCC 2–403(2) and R.C. 1302.44(B). Appellant argues that when ownership of a motor vehicle is in dispute, the applicable Revised Code section is R.C. 4505.04, which states how ownership and interest in motor vehicles are determined. Appellee argues, however, that R.C. 1302.44(B) controls because there was an entrustment of the limousine with an intermediary merchant. Appellant contends that R.C. 1302.44(B) is not applicable in determining ownership of the limousine because the facts do not demonstrate that appellant entrusted the vehicle to anyone.

R.C. 4505.04(A) provides that:

"No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until such person has had issued to him a certificate of title to the motor vehicle, or delivered to him a manufacturer's or importer's certificate for it * * *."

The language found in R.C. 4505.04(A) raises the question of whether Ohio's Certificate of Motor Vehicle Title Act requires the buyer to have the manufacturer's certificate of origin in hand in order to consummate the sale. Ohio case law and statutory law answer this question in the negative.

In *Fuqua Homes, Inc. v. Evanston Bldg. & Loan Co.* (1977), 52 Ohio App.2d 399, 6 O.O.3d 440, 370 N.E.2d 780, the Court of Appeals for Hamilton County held that Ohio's Certificate of Motor Vehicle Title Act grants a unique status to an individual who has in his possession a certificate of origin. However, the court further stated that the rights it creates in a holder of such a certificate are not absolute and the holder does not prevail against all the world under any and all circumstances. *Id.* at 402, 6 O.O.3d at 441, 370 N.E.2d at 782. One such situation where R.C. 4505.04 does not control involves the entrusting of goods to a merchant who deals in goods of that kind. Under this scenario, a third party may acquire title to, or rights in, goods that are the subject of a sales transaction, notwithstanding the third party's failure to possess in hand the title to the goods. The issue before us, therefore, is whether or not there was an entrusting of the limousine under R.C. 1302.44 so as to allow Gold Key to transfer all rights of appellant to appellee.

The UCC entrustment rule is found in R.C. 1302.44, which provides, in pertinent part, that:

"(B) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

"(C) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

According to appellee, appellant's contract with Gold Key constituted an "entrusting of possession" within the meaning of the UCC and clothed Gold Key with the power to transfer appellant's ownership rights to appellee. Appellant concedes that it entered into a contract with Gold Key. However, appellant argues that it never entrusted the limousine to Gold Key. Instead, appellant contends that the vehicle in question bypassed Gold Key altogether and was delivered directly to appellee's agent, Royce Mason. Thus, according to appellant, appellee or its agent should have demanded the certificate of origin before paying for the limousine, and failing that, appellee has no ownership rights or claim to the vehicle.

No one disputes that the limousine is a "good" as defined by R.C. 1302.-01(A)(8),[1] that Gold Key was a merchant who deals in goods of that kind, that appellee was a buyer in the ordinary course of business, and that appellant had legal title to the limousine prior to the transaction. We are therefore left to determine whether or not appellant's action amounted to an "entrusting of possession" of the limousine to Gold Key within the meaning of R.C. 1302.-44(C).

Under UCC 2–403(2) and (3), any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant the power to transfer all rights of the entruster to a buyer in the ordinary course of business. "Entrusting" is defined to include any delivery as well as any acquiescence and retention of possession.

Entrustment should be given a liberal reading. Professor Grant Gilmore, one of the drafters of the UCC, stated that the Code "defines 'entrusting' as including everything short of armed robbery (larceny is expressly approved)." Gilmore, The Good Faith Purchase Idea and The Uniform Commercial Code: Confessions of a Repentant Draftsman (1981), 15 Ga.L.Rev. 605, 618. See, also, 3A Duesenberg & King, Sales and Bulk Transfers (1992), Section 10.06[3]

---

1. "Goods" means "all things * * * which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action."

("entrustment" should be given wide as possible interpretation). The general thrust of the cases involving entrustment of goods to a dealer is aimed at the protection of the purchaser, where the latter acts in "good faith" and the owner takes the risk by placing or leaving the good with a merchant of his own choosing who could convert or otherwise misdeal it. See *Fuqua, supra.*

■ Here, the core issue is whether a merchant must receive actual physical possession of the good to gain "entrustee" status. Neither the Ohio Revised Code nor the UCC provides this court with any assistance since they do not define "possession." While Comment 2 to UCC 2–403 refers to "inventory," nothing in the section itself or the Code definition of "buyer in ordinary course" requires the goods to be physically located in the seller's inventory. White & Summers, Uniform Commercial Code (1980) 143. According to White & Summers, in determining whether there is possession for the purpose of entrustment, a court should look to the merchant's appearance of control over the goods. *Id.*

Under the "appearance of control" test, we find that Gold Key had possession of the limousine for entrustment purposes. Even though the merchant here did not have actual physical possession of the limousine at the time of the sale to appellee, Gold Key nevertheless manifested its ability to control and dispose of the limousine as if it was in its inventory. The facts indicate that Gold Key informed appellee that the limousine would be delivered to it at appellant's place of business in Springfield, Missouri. The vehicle was subsequently picked up by Mason, appellee's agent.[2] Thus, focusing on Gold Key's appearance of control over the limousine, we find that Gold Key had possession, albeit constructive possession, of the vehicle.

Two cases that are on all fours with the instant action come to us from the Colorado Supreme Court. Both *Schneider v. J.W. Metz Lumber Co.* (Colo. 1986), 715 P.2d 329, and *Cugnini v. Reynolds Cattle Co.* (Colo.1984), 687 P.2d 962, stand for the proposition that a merchant need not have actual physical possession of a good to gain "entrustee" status. In *Schneider,* the buyer entered into an agreement with an intermediary merchant to purchase a prefabricated kit for constructing a log house. The merchant ordered logs for the kit from a wholesale lumber company. The merchant then arranged for the wholesaler to deliver the logs directly to the buyer's building site. The logs were to be paid for by the intermediary merchant. The merchant, however, did not pay and the wholesaler placed a lien on the logs. In finding for the buyer, the Colorado Supreme Court held that the wholesaler, by

---

2. Appellant's own witnesses testified that possession of the limousine had been given to Gold Key at appellant's place of business.

delivering materials directly to the buyer, had entrusted possession of the goods to the intermediary merchant even though the merchant failed to obtain actual *physical* control over the logs.

In *Cugnini, supra,* the Colorado Supreme Court found that the entrustment rule was applicable even though the goods were never placed on the merchant's property or place of business. The court found that the merchant demonstrated sufficient control over the goods when he instructed the seller to ship the goods directly to a third party. Once again, the court focused on the merchant's appearance of control over the goods.

Relying upon the liberal interpretation that should be given to the entrustment rule, and the limited case law that has been written on this particular issue, we hold that appellant entrusted possession of the limousine to Gold Key within the meaning of R.C. 1302.44. Our holding on this issue is in accord with the overall policy of the UCC's entrustment provision. First, the decision restricts impediments to the free flow of commerce when buyers in the ordinary course of business are involved. See *Fuqua Homes, Inc. v. Evanston Bldg. & Loan Co. supra.* Second, the protection afforded the buyer is merely a special application of the broad equitable principle that where one of two innocent persons must suffer a loss by reason of the fraud or deceit of another, the loss should rightly fall upon the individual by whose act or omission the wrongdoer has been enabled to commit the fraud. *Id.*

In summary, we find, as did the court below, that appellant entrusted the limousine to a merchant who deals in goods of that kind. The merchant was empowered to transfer appellant's rights to a buyer in the ordinary course of business and did so. Accordingly, appellant's assignments of error are overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KOEHLER, P.J., and WALSH, J., concur.