[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 513.]

SATURN OF KINGS AUTOMALL, INC. ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* MIKE ALBERT LEASING, INC., APPELLEE AND CROSS-APPELLANT.

[Cite as *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.*, 2001-Ohio-1274.]

*Motor vehicles—Certificate of motor vehicle title—Evidence of ownership—Harm to leased vehicle—In determining competing claims of ownership of a motor vehicle, R.C. 4505.04(A) controls over the provisions of the Uniform Commercial Code.*

(No. 00-1478—Submitted April 24, 2001—Decided August 15, 2001.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Hamilton County, No. C-990703.

_____

**SYLLABUS OF THE COURT**

In determining competing claims of ownership of a motor vehicle, R.C. 4505.04(A) controls over the provisions of the Uniform Commercial Code.

_____

**DOUGLAS, J.**

{¶ 1} This appeal involves a dispute concerning the ownership of three motor vehicles. The parties have stipulated to the following facts.

{¶ 2} On November 19, 1998, Gallatin Auto Sales ("Gallatin") contracted with Saturn of Kings Automall, Inc. ("Saturn") whereby Gallatin agreed to purchase five motor vehicles from Saturn. Among the motor vehicles Gallatin agreed to purchase were a 1996 Honda Accord LX and a 1995 Honda Accord EX. The purchase price for the 1996 Honda was $13,500 and the purchase price for the 1995 Honda was $13,100.

{¶ 3} Saturn permitted Gallatin to remove all five vehicles from its dealership prior to Gallatin's tendering payment. Although Gallatin was allowed to take physical possession of the five vehicles, Saturn withheld the certificate of title to each vehicle pending receipt of payment from Gallatin.

{¶ 4} On November 20, 1998, Gallatin entered into a purchase contract with Cronin Motor Company LLC ("Cronin"). Gallatin agreed to buy a 1998 Dodge Durango from Cronin for the purchase price of $25,500. Cronin also allowed Gallatin to take possession of the vehicle prior to receiving payment. Likewise, the certificate of title to the Dodge remained in the possession of Cronin pending receipt of payment from Gallatin.

{¶ 5} After removing the 1995 and 1996 Hondas from Saturn's dealership and the 1998 Dodge from Cronin's dealership, Gallatin sold these vehicles to Mike Albert Leasing, Inc. ("Albert Leasing"). Albert Leasing paid Gallatin a total purchase price of $47,000 for the three vehicles.

{¶ 6} Gallatin failed to pay Saturn any sums toward the purchase of the Hondas and also failed to pay Cronin the purchase price for the Dodge. As a result, neither Saturn nor Cronin would release the certificates of title for the three vehicles to Gallatin and, thus, Gallatin never provided title of the vehicles to Albert Leasing.

{¶ 7} On March 3, 1999, Saturn and Cronin filed an action in the Court of Common Pleas of Hamilton County against Albert Leasing and Gallatin. The complaint sought replevin and money damages arising from the alleged conversion of the three motor vehicles. On March 9, 1999, Albert Leasing filed an answer and counterclaim against Saturn and Cronin. In its counterclaim, Albert Leasing alleged that it had lawfully purchased the three vehicles from Gallatin and therefore requested that the trial court order Saturn and Cronin to deliver the certificates of title to Albert Leasing. A cross-claim was also filed by Albert Leasing against Gallatin raising allegations of breach of contract and fraud.

2

**{¶ 8}** On September 29, 1999, the trial court granted summary judgment in favor of Saturn and Cronin on their replevin claim. The trial court held that R.C. 4505.04 was applicable to this matter. The trial court found that because Saturn and Cronin never relinquished the certificates of title, Gallatin never owned the motor vehicles when it sold them to Albert Leasing. Therefore, the trial court determined that Gallatin was incapable of passing good title. In its entry granting summary judgment, the trial court also approved the terms of two escrow agreements entered into between Saturn and Albert Leasing and Cronin and Albert Leasing. Through these agreements, Saturn, Cronin, and Albert Leasing agreed to have the vehicles at issue sold with the proceeds of the sales to be placed in escrow accounts pending ultimate resolution of this matter. On October 4, 1999, Gallatin filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code.

**{¶ 9}** On October 7, 1999, Albert Leasing appealed the trial court's summary judgment decision to the Court of Appeals for Hamilton County. The court of appeals reversed the judgment of the trial court, concluding that the trial court had erred in finding that ownership of the vehicles in question was controlled by R.C. 4505.04. Instead, the court held that the trial court should have determined ownership according to the Uniform Commercial Code ("UCC"), codified, in part, in R.C. Chapter 1302. The court of appeals determined that, pursuant to R.C. 1302.44(B), Saturn and Cronin had entrusted the vehicles to Gallatin and, thus, had given Gallatin power under the statute to transfer ownership rights to a buyer in the ordinary course of business. The court of appeals found that a genuine issue of material fact existed with respect to whether Albert Leasing qualified as a buyer in the ordinary course of business under the UCC and remanded the matter to the trial court for further proceedings.

**{¶ 10}** This cause is now before this court upon the allowance of a discretionary appeal and cross-appeal.

{¶ 11} The primary issue presented for our review is whether a person may acquire legal ownership of a motor vehicle without transfer to that person of the vehicle's certificate of title.  In order to resolve this issue we must consider the interplay between Ohio's adoption of Article 2 of the UCC, codified at R.C. Chapter 1302, and Ohio's Certificate of Motor Vehicle Title Law as embodied in R.C. Chapter 4505.

{¶ 12} Saturn and Cronin, appellants and cross-appellees ("appellants"), contend that Ohio's Certificate of Motor Vehicle Title Law governs disputes involving competing claims of ownership of a motor vehicle.  Appellants urge this court to interpret the language of R.C. 4505.04(A) as providing that legal ownership of a motor vehicle can be acquired only by obtaining possession of the certificate of title to that vehicle.  On the other hand, Albert Leasing, appellee and cross-appellant ("appellee"), argues that Ohio's UCC controls certain questions relating to ownership of motor vehicles.  Appellee contends that R.C. 4505.04 is not absolute and does not control situations involving entrustment of a motor vehicle pursuant to R.C. 1302.44.

{¶ 13} R.C. 4505.04(A) provides:

"No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, or delivered to the person a manufacturer's or importer's certificate for it; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration."

{¶ 14} R.C. 1302.44 provides:

4

"(B) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business.

"(C) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

{¶ 15} The Ohio Certificate of Motor Vehicle Title Law was enacted in order to "create an instrument evidencing title which would more adequately protect innocent purchasers of motor vehicles." *Kelley Kar Co. v. Finkler* (1951), 155 Ohio St. 541, 545, 44 O.O. 494, 496, 99 N.E.2d 665, 667. Prior to the enactment, title to a motor vehicle was evidenced only by a bill of sale. G.C. Chapter 6310, 109 Ohio Laws 330. The legislative purpose behind the enactment of the Certificate of Title Act "is to prevent the importation of stolen motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to, and ownership of, motor vehicles." *Hughes v. Al Green, Inc.* (1981), 65 Ohio St.2d 110, 115, 19 O.O.3d 307, 310, 418 N.E.2d 1355, 1358.

{¶ 16} Since the enactment of G.C. 6290-4,[1] the precursor to R.C. 4505.04, the language of R.C. 4505.04(A), the specific provision at issue in this matter, has

---

1. G.C. 6290-4 provided:

"No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate

remained substantially unchanged. However, the statutory language has been construed in varying ways throughout the years. For instance, in *Mielke v. Leeberson* (1948), 150 Ohio St. 528, 38 O.O. 352, 83 N.E.2d 209, the court held at the syllabus that "[u]nder the plain and unambiguous language of Section 6290-4, General Code, a court cannot recognize the right, title, claim or interest of any person in or to any motor vehicle, without the production of a certificate of title or manufacturer's or importer's certificate duly issued in accordance with the Certificate of Title Law, and any other evidence of ownership is not of sufficient weight to sustain a verdict or judgment where title must be proved as a condition precedent for the validity of such verdict or judgment." In *Kelley Kar Co.,* the court held that a plaintiff in an action for replevin of a motor vehicle cannot prevail against a purchaser who has an Ohio certificate of title. *Id.,* 155 Ohio St. 541, 44 O.O. 494, 99 N.E.2d 665, paragraph five of the syllabus. Additionally, in *Commercial Credit Corp. v. Pottmeyer* (1964), 176 Ohio St. 1, 26 O.O.2d 286, 197 N.E.2d 343, the court held at paragraph four of the syllabus that "[a]n Ohio bona fide purchaser of a motor vehicle may be protected whether his Ohio certificate of title resulted from fraudulent representations of a swindler or of a thief."

{¶ 17} In 1968, paragraphs three[2] and four of the syllabus in *Pottmeyer* were overruled by the decision of the court in *Hardware Mut. Cas. Co. v. Gall* (1968), 15 Ohio St.2d 261, 44 O.O.2d 448, 240 N.E.2d 502. The *Gall* court held that "a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for

---

duly issued, in accordance with the provisions of this chapter." 117 Ohio Laws 373, 374. See, also, 114 Ohio Laws 173, 175, for earliest version (1931).

2. Paragraph three of the syllabus in *Commercial Credit Corp. v. Pottmeyer* (1964), 176 Ohio St. 1, 26 O.O.2d 286, 197 N.E.2d 343, provided that "[o]ne who claims a right, title or interest in or to a motor vehicle but whose claim is not noted upon any Ohio certificate of title cannot prevail in an action in replevin against a purchaser in Ohio of such motor vehicle, who acquired possession in Ohio of such vehicle together with an apparently valid Ohio certificate of title therefor in good faith and without notice of any right, title or interest in such vehicle not set forth in his certificate of title."

value without notice, although the certificate of title used in the purported transfer appears valid on its face." *Id.* at paragraph three of the syllabus.

{¶ 18} Beginning with *Gall*, it is apparent that a less restrictive construction regarding the Ohio Certificate of Title Law began to evolve from the earlier case law that strictly construed R.C. 4505.04, and its predecessor section, G.C. 6290-4. In *Hughes v. Al Green, Inc.* (1981), 65 Ohio St.2d 110, 19 O.O.3d 307, 418 N.E.2d 1355, this court held that "[w]here a motor vehicle identified to a purchase contract is damaged, lost or destroyed prior to the issuance of a certificate of title in the buyer's name, the risk of such damage, loss or destruction lies with either the seller or the buyer as determined by the rules set forth in R.C. 1302.53 (U.C.C. 2-509)." *Id.* at syllabus. The court was called upon in *Hughes* to determine which party bore the risk of loss for damage that occurred to an automobile prior to the transfer of title from the seller to the buyer. The *Hughes* court rejected the notion that title was relevant in determining whether the buyer or seller bore the risk of loss and, instead, adopted the contractual approach contemplated in the UCC to resolve such issues. *Id.*, 65 Ohio St.2d at 114, 19 O.O.3d at 309, 418 N.E.2d at 1357. The court noted that "[i]n cases decided prior to the adoption of the Uniform Commercial Code, the Certificate of Title Act was properly consulted in determining whether a buyer or seller bore the risk of loss or could proceed against third-party tortfeasors because determination of those issues was dependent, under the common law, upon a finding of *ownership*." (Emphasis *sic*.) *Id.* at 116, 19 O.O.3d at 310-311, 418 N.E.2d at 1358. With ownership no longer determinative and with the focus now on specific acts such as tender of delivery of the goods by the seller or receipt of the goods by the buyer, the court concluded that R.C. 4505.04 was irrelevant to the issue of risk of loss. *Id.* at 114-116, 19 O.O.3d at 309-311, 418 N.E.2d at 1357-1358.

{¶ 19} Similarly, in *Smith v. Nationwide Mut. Ins. Co.* (1988), 37 Ohio St.3d 150, 524 N.E.2d 507, this court considered whether the Ohio Certificate of

Title Act or the Ohio UCC determines the issue of whether an alleged seller's policy of automobile liability insurance "applies with respect to risk of loss or damage after the sale of an automobile." *Id.* at 151-152, 524 N.E.2d at 508. The court held that "[t]he criteria found in R.C. 1302.42(B), and not the Certificate of Title Act, identify the owner of a motor vehicle for purposes of determining insurance coverage in case of an accident." *Id.* at syllabus.

{¶ 20} The issues presented in *Hughes* and *Smith* were not the same as the issue before the court in this matter. In *Hughes* and in *Smith,* the court was asked to decide whether the Ohio Certificate of Title Act or the Ohio UCC controlled in order to identify the owners of motor vehicles for purposes of determining which party was responsible for the risk of loss (*Hughes*) and insurance coverage (*Smith*) for damages that occurred to a motor vehicle prior to the lawful transfer of title.

{¶ 21} We are once again called upon to decide, upon the facts before us, whether Ohio's Certificate of Motor Vehicle Title Law or Ohio's UCC applies. In *Hughes* and in *Smith,* however, it bears repeating that the issues were risk of loss and insurance coverage. Conversely, the question now before us involves competing claims of ownership of three motor vehicles. Here, contractual rights between the parties are not at issue. Notwithstanding the differences between the questions presented in *Hughes, Smith,* and this case, we nevertheless find the court's decisions in those cases dispositive of the case at bar.

{¶ 22} In *Hughes,* the court stated that " 'R.C. 4505.04 was intended to apply to litigation where the parties were rival claimants to title, *i.e.,* ownership of the automobile; to contests between the alleged owner and lien claimants; to litigation between the owner holding the valid certificate of title and one holding a stolen, forged or otherwise invalidly issued certificate of title; and to similar situations. *Kelley Kar Co. v. Finkler* (1951), 155 Ohio St. 541 [44 O.O. 494, 99 N.E.2d 665]; 5 W. Reserve L. Rev. 403, 404 (1954).' " *Hughes*, 65 Ohio St.2d at 115-116, 19 O.O.3d at 310, 418 N.E.2d at 1358, quoting *Grogan Chrysler-*

8

*Plymouth, Inc. v. Gottfried* (1978), 59 Ohio App.2d 91, 94-95, 13 O.O.3d 154, 156, 392 N.E.2d 1283, 1285-1286.

{¶ 23} In *Smith,* the court relied on the language and rationale set forth in *Hughes* and reiterated that " '[t]he purpose of the Certificate of Title Act is to prevent the importation of stolen motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to, and ownership of, motor vehicles.' " *Smith,* 37 Ohio St.3d at 152-153, 524 N.E.2d at 509, quoting *Hughes* at 115, 19 O.O.3d at 310, 418 N.E.2d at 1358. The court further stated that "[i]t is apparent that R.C. 4505.04 is irrelevant to all issues of ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership." *Id.* at 153, 524 N.E.2d at 509.

{¶ 24} We find that the above language of *Hughes* and *Smith* resolves the issue before us. Simply stated, this case is a dispute between the parties involving competing claims of ownership and title to the motor vehicles at issue in this matter. The court, having already spoken on this issue, has clearly and unequivocally stated that R.C. 4505.04 was intended to apply to litigation where the parties were rival claimants to title, *i.e.,* ownership of the automobile. *Hughes*, 65 Ohio St.2d at 115-116, 19 O.O.3d at 310, 418 N.E.2d at 1358.

{¶ 25} Furthermore, we find that the provisions at issue, R.C. 4505.04(A) and 1302.44, are not in conflict. In both *Hughes* and *Smith*, it was the conclusion of the court that the UCC provisions at issue therein, R.C. 1302.53 and 1302.42(B), respectively, were not in conflict with R.C. 4505.04. Although *Hughes* and *Smith* involved sections of the UCC not under consideration here, the court was clear in setting forth those issues of ownership where the Ohio Certificate of Title Act would control over the Uniform Commercial Code. *Smith,* 37 Ohio St.3d at 152-153, 524 N.E.2d at 509; *Hughes,* 65 Ohio St.2d at 115-116, 19 O.O.3d at 310, 418 N.E.2d at 1358.

**{¶ 26}** Even assuming, *arguendo,* that R.C. 4505.04(A) and 1302.44 are in conflict, we believe that, if necessary, the sections could be construed so as to give effect to each. R.C. 1302.44(B) provides:

"Any entrusting of possession of goods to a merchant who deals in goods of that kind *gives the merchant the power to transfer all rights of the entruster* to a buyer in ordinary course of business." (Emphasis added.)

**{¶ 27}** In resolving apparent conflicts between statutory provisions, R.C. 1.51 provides:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both."

**{¶ 28}** In this regard, we agree with the analysis of the Texas Court of Appeals construing the Texas Certificate of Title Act and Texas's version of the UCC in the case of *Pfluger v. Colquitt* (Tex.Civ.App.1981), 620 S.W.2d 739. In harmonizing the UCC's entrustment statute with Texas's Certificate of Title Act, the court stated in *Pfluger:*

"[T]he merchant's power 'to transfer all rights of the entruster' is intended to give the merchant the same power to transfer which the owner of goods can exercise himself, even though the owner may not actually have authorized the merchant to make such a transfer. [The entrustment provision] need not be interpreted to give the merchant greater power than the owner himself has to transfer the title to a motor vehicle. The power of the owner of a motor vehicle to transfer the title is limited by the Certificate of Title Act * * * which provides that no motor vehicle shall be disposed of at a subsequent sale and no title shall pass without a transfer of the certificate in the manner prescribed by the Act. Under this provision, if the owner has no power to dispose of the vehicle without a proper transfer of the certificate, then no merchant to whom the vehicle is entrusted has the power to dispose of it without a proper transfer of the certificate. A purchaser from the merchant to whom the vehicle is entrusted acquires exactly the same rights

10

as if he had purchased from the owner, but no more. If he purchased from a merchant without a proper transfer of the certificate, he gets no better title than if he had purchased from the owner without a proper transfer of the certificate." *Id.* at 741.

{¶ 29} Finally, we take note of the discussion of *amicus curiae*, the Ohio Automobile Dealers' Association, regarding the historical nature of the automobile dealer industry's practice of handling and transferring certificates of title. According to *amicus curiae*, allowing a buyer to take physical possession of a motor vehicle while the seller retains the certificate of title to the vehicle until payment is tendered is, in fact, an industrywide practice.[3] We see no reason to alter that practice by our decision today.

{¶ 30} Accordingly, we hold that in determining competing claims of ownership of a motor vehicle, R.C. 4505.04(A) controls over the provisions of the Uniform Commercial Code. In this matter, appellants retained possession of the certificates of title to the motor vehicles at issue in this dispute. Pursuant to R.C. 4505.04(A), title to and, thus, ownership of a motor vehicle in this context does not pass without issuance or delivery of the certificate of title. Because the certificates of title were never assigned and delivered to Gallatin, Gallatin was never the lawful owner of the vehicles and, therefore, could not lawfully pass title to appellee. Appellants, by retaining possession of the certificates of title, are the rightful owners of the motor vehicles and, as such, are entitled to the proceeds of sale placed in escrow. Given the foregoing, our decision renders the cross-appeal moot.

*Judgment reversed.*

MOYER, C.J., RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

_____

3. See, specifically, R.C. 4505.181.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 31} As the majority opinion suggests, the interplay between Ohio's Certificate of Title Act, R.C. 4505.01 *et seq.* ("CTA") and the entrustment provisions of Ohio's version of the Uniform Commercial Code (the "Code"), specifically R.C. 1302.44, is complex. Commentators have noted a "lack of consistency" in an "astounding array of cases" on this issue. See, *e.g.*, Kunz, Motor Vehicle Ownership Disputes Involving Certificate-of-Title Acts and Article Two of the U.C.C. (Aug.1984), 39 Bus.Law 1599, 1599-1600. In two cases decided since our General Assembly adopted the Code, this court deemed the Code dispositive. See *Hughes v. Al Green, Inc.* (1981), 65 Ohio St.2d 110, 19 O.O.3d 307, 418 N.E.2d 1355; *Smith v. Nationwide Mut. Ins. Co.* (1988), 37 Ohio St.3d 150, 524 N.E.2d 507. Relying on dicta from these cases, today's majority reaches the opposite conclusion, deciding that the CTA controls when it comes to "determining competing claims of ownership" of motor vehicles. For the following reasons, however, I respectfully dissent.

I. Statutory Purpose

{¶ 32} The majority notes—on two separate occasions—that the General Assembly enacted Ohio's CTA in order to, among other things, "protect innocent purchasers of motor vehicles." *Kelley Kar Co. v. Finkler* (1951), 155 Ohio St. 541, 545, 44 O.O. 494, 496, 99 N.E.2d 665, 667; see, also, *Hughes*, 65 Ohio St.2d at 115, 19 O.O.3d at 310, 418 N.E.2d at 1358. Yet, the majority's elevation of the CTA over the Code in the instant case thwarts that purpose by favoring the seller/title holder ("Saturn")—not the apparently innocent party ("Mike Albert") who purchased the vehicles from Saturn's vendee ("Gallatin").

{¶ 33} If the purpose of the CTA is to protect innocent purchasers of motor vehicles, as everyone seems to agree, then the Code's entrustment provisions that

shelter the "buyer in [the] ordinary course of business" seem better adapted to fulfill that purpose in this case than the CTA. See R.C. 1302.44(B); 1301.01(I); see, also, Kunz, Motor Vehicle Ownership, 39 Bus.Law at 1604. It is for this reason that "[t]he vast majority of states" have decided to "place primacy on the entrustment doctrine" when confronted with apparently conflicting CTA and Code provisions. Epling, Priorities Disputes in Motor Vehicles and in Other Certificated Goods (Feb.1986), 41 Bus.Law 361, 368. "Under a variety of theories, the vast majority of state courts hold that the buyer from the dealer prevails over the unpaid supplier holding the title certificate * * *. While some courts have paid lip service to harmonizing the U.C.C. with the state motor vehicle laws, a reading of the cases suggests that, with the exception of Colorado and Missouri, the courts have in effect reached a policy decision that the loss in such a situation is better borne by the unpaid supplier." *Id.* at 369.

## II. *Hughes* and *Smith*

{¶ 34} I also disagree with the manner in which the majority first distinguishes, then deems "dispositive," this court's decisions in *Hughes* and *Smith*. According to the majority, "it bears repeating that the issues [in those cases] were risk of loss and insurance coverage. Conversely, the question now before us involves *competing claims of ownership* of three motor vehicles." (Emphasis added.) To justify its departure from those cases' preference for the Code, the majority draws a questionable distinction, because to suggest that *Smith* did not concern the concept of motor vehicle "ownership" overlooks syllabus language from that very case. *Smith*'s syllabus provides that "the criteria found in R.C. 1302.42(B), and not the Certificate of Title Act, *identify the owner* of a motor vehicle for purposes of determining insurance coverage in case of an accident." (Emphasis added.) *Id.,* 37 Ohio St.3d 150, 524 N.E.2d 507, syllabus. "Ownership" embraces a "collection of rights," Black's Law Dictionary (7 Ed.1999) 1131, and

13

it is not entirely clear *why* the majority decides that the Code now controls some of the rights in that bundle (*Hughes* and *Smith*) but not others.

{¶ 35} As an additional justification for distinguishing *Hughes* and *Smith* and finding the CTA controlling, the majority asserts that "[h]ere, contractual rights between the parties are not at issue." This assertion oversimplifies the case. Saturn's complaint includes a breach-of-contract claim against Gallatin, and Saturn attached the relevant "Vehicle Purchase Contract" as Exhibit A to its complaint. Although Saturn's breach-of-contract claim is not before us now, given the trial court's grant of summary judgment in favor of Saturn on its replevin claim, the trial court expressly relied on the purchase agreement between Saturn and Gallatin when it disposed of Saturn's replevin claim.[4] In any event, the applicability of the Code's entrustment provisions does not depend upon the terms of a sales contract. R.C. 1302.44(B) applies to any "entrusting of possession" of goods to a merchant who deals in goods of that kind. The Code defines "entrusting" as "any delivery and any acquiescence in retention of possession *regardless of any condition expressed between the parties to the delivery or acquiescence.*" (Emphasis added.) R.C. 1302.44(C). Accordingly, it would seem that the lack of a dispute about "contractual rights" between Saturn and Mike Albert should not, as the majority implies, militate *against* applying the Code's entrustment provisions in Mike Albert's favor.

{¶ 36} In all events, I would eschew resolving our new cases on the basis of dicta from old cases that involved different issues. I agree with the majority insofar as dicta from *Hughes*, later resurrected in *Smith,* states that the CTA—not the Code—should control litigation "*where the parties [are] rival claimants to title.*" (Emphasis added.) *Hughes,* 65 Ohio St.2d at 115-116, 19 O.O.3d at 310,

---

4. In its letter opinion, the trial court stated that "[Saturn] never intended to entrust the vehicles to Gallatin. The purchase agreement was for the sale of the vehicles and was not contingent upon what Gallatin intended to do with them."

418 N.E.2d at 1358; see, also, *Smith,* 37 Ohio St.3d at 152-153, 524 N.E.2d at 509, citing *Hughes*. But this dicta from *Hughes* and *Smith,* so central to the majority's decision today, is traceable to a case decided in 1951—*a decade before the General Assembly had even adopted the Code*. See *Hughes,* 65 Ohio St.2d at 115-116, 19 O.O.3d at 310, 418 N.E.2d at 1358, citing *Kelley Kar Co.,* 155 Ohio St. 541, 44 O.O. 494, 99 N.E.2d 665. Because the case before us presents an alleged conflict between the CTA and the Code, I disagree with the majority's reliance on what is, at bottom, pre-Code dicta to resolve it. When the General Assembly adopted Ohio's version of Article 2, it likewise adopted the drafters' stated intent to *diminish* the role that the concept of "title" should play in the sale of goods. See R.C. Chapter 1302, 1961 Legislative Service Commission Commentary ("The most striking change is the subordination of the concept of title as the prime determinant of the rights of the parties under a sales contract"); see, also, Kunz, Motor Vehicle Ownership, 39 Bus.Law at 1601 (citing Professor Karl Llewellyn, a Code drafter, for the proposition that "[t]he purpose [of the Code] is to avoid making practical issues between practical men turn on the location of an intangible something, the passing of which no man can prove by evidence").

### III. *Pfluger v. Colquitt*

{¶ 37} Finally, I disagree with the majority's application of *Pfluger v. Colquitt* (Tex.Civ.App.1981), 620 S.W.2d 739. The majority applies *Pfluger* in support of its argument that, *even if the Act and the Code conflict*, the sections may be construed so as to give effect to each per R.C. 1.51. By its terms, however, R.C. 1.51 requires an initial determination that statutes *actually conflict*. See *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 29, 697 N.E.2d 610, 615 (finding R.C. 1.51 inapplicable due to lack of statutory conflict). Given that the *Pfluger* court expressly found that Texas's CTA did *not* conflict with the relevant commerce code provisions, *Pfluger* is not a persuasive case to apply in an R.C. 1.51 analysis. See

*id.,* 620 S.W.2d at 741 ("We do not agree that section 2.403[b] of the Code conflicts with the Certificate of Title Act").

**{¶ 38}** The majority also fails to note that the *Pfluger* court ultimately decided in favor of the innocent consumer of the vehicles at issue—a disposition completely at odds with the majority's disposition here in favor of Saturn. See *id.* at 743 (deciding that, as between the seller/title holder and the ultimate consumer, the defalcation of the seller's agent should be borne by the seller). In any event, the *Pfluger* majority's analysis is suspect. The concurring judge in *Pfluger* noted that the majority's application of the general law of agency in this context was unprecedented since the enactment of Texas's CTA four decades earlier. See *id.* at 744 (Stephens, J., concurring, arguing that "the Code should govern"). More recent authority from Texas states that "the Code controls over the Act's provision that purports to void the sale of an automobile absent the transfer of the certificate of title." *Hudson Buick, Pontiac, GMC Truck Co. v. Gooch* (Tex.App.1999), 7 S.W.3d 191, 198.

IV. Conclusion

**{¶ 39}** For the foregoing reasons, I respectfully dissent. In disputes such as this one between a seller/title holder and a third party who has purchased motor vehicles from the seller's merchant-entrustee, application of the Code's entrustment provisions would advance the shared purpose of *both* the CTA *and* the Code to protect innocent purchasers, and would align this court with the apparent weight of authority on the subject. See Epling, Priorities Disputes, 41 Bus.Law at 368-369; see, also, *Martin v. Nager* (1983), 192 N.J.Super. 189, 205-206, 469 A.2d 519, 527 (collecting cases from twelve jurisdictions); *Fuqua Homes, Inc. v. Evanston Bldg. & Loan Co.* (1977), 52 Ohio App.2d 399, 370 N.E.2d 780; *Executive Coach Builders v. Bush & Cook Leasing, Inc.* (1992), 81 Ohio App.3d 808, 612 N.E.2d 408. Moreover, application of the Code's entrustment provisions in these cases would correspond to the equitable principle that, where one of two innocent persons

16

(Saturn or Mike Albert) must suffer a loss by reason of the fraud or deceit of another (Gallatin), the loss should fall upon the individual whose act or omission has enabled the wrongdoer to commit the fraud (Saturn).[5]  See, generally, Kunz, Motor Vehicle Ownership, 39 Bus.Law at 1604; Epling, Priorities Disputes, 41 Bus.Law at 369; *Executive Coach,* 81 Ohio App.3d at 814, 612 N.E.2d at 411-412.  For purposes of this dissent, I express no opinion regarding that portion of the court of appeals' disposition addressing the parties' stipulation that Mike Albert purchased the vehicles "in the ordinary course of business."[6]

—————————————

*Cors & Bassett* and *Curtis L. Cornett,* for appellant and cross-appellee Saturn of Kings Automall, Inc.

*Spraul, Veith & Doan* and *Terrence M. Veith,* for appellant and cross-appellee Cronin Motor Company LLC.

*Barron, Peck & Bennie* and *Michael S. Barron,* for appellee and cross-appellant Mike Albert Leasing, Inc.

*Cooper & Elliott* and *David Brown,* urging reversal for *amicus curiae,* Ohio Automobile Dealers' Association.

———————————————

5. Incidentally, it should be noted that if this court were to apply the Code's entrustment provisions in the replevin action between Saturn and Mike Albert, as the court of appeals did, this would not impair Saturn's ability to mitigate its losses by seeking recovery of damages in its separate and independent action for breach of contract against Gallatin.

6. The court of appeals determined that, as a matter of law, an "entrustment" occurred under R.C. 1302.44(C) when Saturn allowed Gallatin to take possession of the vehicles.  Though the court of appeals also noted that the parties stipulated that Mike Albert had purchased the vehicles from Gallatin "in the ordinary course of business," the court remanded the cause with the following instructions:

"Should the trial court choose to construe the parties' stipulation that Mike Albert purchased the vehicles 'in the ordinary course of business' as a stipulation that Mike Albert acted in good faith and observed reasonable commercial standards, then Mike Albert is entitled to judgment as a matter of law.  If not, the trial court must either make a determination on this issue as the record presently exists, allow the parties to expand upon the stipulated record, or proceed to trial.

" * * * Absent a determination by the trial court as to the construction of the parties' stipulation, we cannot say that the trial court erred in denying summary judgment to Mike Albert."

_____