[Cite as *In re $449 U.S. Currency*, 2012-Ohio-1701.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: $449 U.S. CURRENCY; a 1965 FORD MUSTANG, VIN 5707T643579 and 5F0703711212; and FOUR NEW TOYO TIRES SEIZED FROM DARWIN FRIERSON. | : : : : : : : | APPEAL NO. C-110176 TRIAL NO. M-09-1298 *O P I N I O N.* |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  April 18, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mark G. Waters*, Assistant Prosecuting Attorney, for Appellant,

*Rodney J. Harris,* for Appellee.

Please note:  This case has been removed from the accelerated calendar.

Per Curiam.

{¶1}     This appeal arises in the context of a civil forfeiture action instituted by the Hamilton County Prosecutor involving $449 in currency, a 1965 Ford Mustang,[1] and four unattached Toyo tires that the Cincinnati police had seized from the residence of Darwin Frierson. At the conclusion of the forfeiture hearing, a magistrate ordered forfeiture of the property.

{¶2}     Upon Frierson's objection, the trial court rejected the magistrate's decision in part and ordered the state to return the Mustang and the tires to Frierson. The state appealed. Because the record demonstrates that Frierson had standing to challenge the forfeiture and that misconduct by the trial judge at the objection hearing was harmless error, we affirm.

## I. Background Facts

{¶3}     Frierson was arrested on December 4, 2009, for drug trafficking. The arrest occurred after the police had observed Frierson make two drug sales to an informant for $2,800. The police recovered approximately five pounds of marijuana from the Oldsmobile that Frierson was operating at the time of his arrest. Later that day the police seized from Frierson's house the property that became the subject of these forfeiture proceedings. The police believed that these items were proceeds of Frierson's drug trafficking activity.

{¶4}     During an interview, Frierson admitted to selling marijuana "to make ends meet" while unemployed and informed the police that the Mustang had been given to him. The police found no drug paraphernalia in the Mustang, nor had they seen Frierson operate it during a few weeks of surveillance. Later, Frierson was convicted of drug trafficking.

---

[1] The record demonstrates that the Mustang's identification number is 5707T643579.

{¶5}    Before the state filed this civil forfeiture action under R.C. 2981.05, Sharon Dillman, the asset forfeiture unit coordinator for the Cincinnati Police Department, had attempted to determine persons with an interest in the Mustang. Dillman's research showed that as of December 4, 2009, the vehicle was titled in Dale Vollmer's name, but that a temporary tag had been issued to Frierson.

{¶6}    When Dillman contacted Frierson, he told her that Vollmer had recently given the Mustang to Frierson's father, Lenny, and that his father had then given it to him. Dillman contacted Vollmer, who confirmed that he had recently given the Mustang to Lenny, a friend and former business colleague. During the same conversation, Dillman advised Vollmer that the Mustang remained titled in his name.

{¶7}    Although the state had identified both Frierson and Vollmer as persons with interest in the property in the complaint for forfeiture, only Frierson answered the forfeiture complaint and requested the return of the property.

{¶8}    At the forfeiture hearing, Vollmer testified that after unsuccessfully trying to sell the Mustang, he gifted it to Lenny in mid-November with the understanding that Lenny wanted to give it to Frierson. Further, he stated that his first attempt to transfer title was unsuccessful, but that he successfully transferred the title out of his name after the property had been seized.

{¶9}    Frierson and his father Lenny testified that Vollmer gave the Mustang to Lenny, that Lenny gave it to Frierson without any consideration or expectation of future consideration, and that Lenny eventually had the Mustang titled directly in Frierson's name. Neither the state nor Frierson, however, presented documentary evidence of the Mustang's certificate of title information after Dillman's initial search.

{¶10}     With respect to the other seized property, Frierson claimed that the currency recovered was a part of his savings from prior employment and that he purchased the Toyo tires that had been found in his garage "awhile ago."

{¶11}     The remainder of the testimony at the hearing focused on Frierson's unemployment during the several months before his arrest, after years of employment with the same company, and Frierson's monthly expenses and revenue sources, including unemployment compensation and contributions from family members, during the months of unemployment.  The record contains no evidence that Frierson, who possessed the Mustang for a short time before the seizure, expended any money for the upkeep of the Mustang.

{¶12}     The magistrate ordered all the property forfeited after finding that Frierson's expenses had exceeded his legitimate income.  Additionally, with respect to the Mustang, the court found that Vollman's gift had not been completed because the certificate of title had not been successfully transferred out of Vollman's name and that Frierson "was never in the chain of title for the Mustang, never gave any consideration for it, and did not have sufficient income to afford it."  Frierson filed objections contesting the forfeiture of the Mustang and the tires, claiming that the state failed to prove the requisite nexus between the property and the offense.

{¶13}     At a hearing on the objections, the state argued for the first time that Frierson lacked standing to contest the forfeiture of the Mustang.  The trial judge continued the case for the stated reasons of reviewing the transcript from the magistrate's hearing and retrieving the current "VIN registration" for the Mustang.

{¶14}     When the objections hearing resumed, the trial judge adopted the state's position that in Ohio ownership of a vehicle is determined by the certificate of title, that "forfeiture pertains to title," and that, therefore, a person outside of the chain of title lacks standing to contest a forfeiture.  Frierson argued otherwise.

{¶15}    The trial judge then marked as her own exhibit what she described as the title information for the Mustang that she had received from the Hamilton County Clerk's Office.  She also referenced a conversation that she had with a clerk's office employee concerning the title.  The judge explained on the record that the exhibit demonstrated that the title had been transferred from Vollmer to Frierson after the seizure.[2]  Neither the state nor Freirson took exception to the trial court's conduct.

{¶16}    After an "independent review of the evidence" presented, the trial judge sustained Frierson's objections, rejected the magistrate's decision with respect to the Mustang and tires, and ordered that the state return the Mustang and tires to Frierson because the state failed to establish any nexus between that seized property and Frierson's drug trafficking.  This appeal followed.

{¶17}    In the first assignment of error, the state challenges the trial court's decision to return the Mustang and the tires to Frierson on the ground that Frierson lacked standing to contest their forfeiture.  In the second assignment of error, the state argues that the trial judge exceeded the scope of the "independent review" permitted under Civ.R. 53.

## II. Standing

{¶18}    The civil forfeiture proceedings in this case are governed by R.C. Chapter 2981, effective July 1, 2007.  *See* 2006 Sub.H.B. No. 241.  Generally, the new chapter unified and expanded former specific forfeiture provisions.  Katz, Martin, Lipton and Crocker, *Baldwin's Ohio Prac. Crim. L.*, Section 129:1 (2011).  The legislature sought "to balance punitive and remedial policies with the imperative of limiting the state's exercise of police power in derogation of private property rights." *Id.* at Section 129:2.  *See also* R.C. 2981.01(A)(1)-(4).

---

[2]  The actual exhibit is not a part of our record on appeal.

{¶19}     The new chapter authorizes the state to obtain a forfeiture order in a criminal proceeding, described in R.C. 2981.04, or in a separate civil forfeiture proceeding, described in R.C. 2981.05.   To that end, R.C. 2981.05(A) allows a prosecutor to file a civil complaint requesting the forfeiture of property that is located within the jurisdiction of the prosecutor's political subdivision and that is alleged to be connected to an offense as contraband, proceeds, or an instrumentality, as defined in R.C. 2981.02.   The state or political subdivision acquires provisional title to property subject to forfeiture upon the commission of the offense.   R.C. 2981.03.  This case involves property alleged to be proceeds—property "derived from or acquired through the commission of an offense."  R.C. 2981.02(A)(2).

{¶20}     In a civil forfeiture proceeding brought under R.C. 2981.05, the prosecutor must prove by a preponderance of the evidence that the property is subject to forfeiture because the property meets the definition of contraband, proceeds, or an instrumentality.  *See* R.C. 2981.05(D).  The trial court "shall issue" a civil forfeiture order if the court determines that the prosecutor has met his burden under the statute and a finding is made, when required, that forfeiture is not disproportionate to the severity of the offense.  *Id.*

{¶21}     The forfeiture statutes provide procedures for "a person with an interest in the property subject to forfeiture" to petition for release of the property at various times during the civil forfeiture proceedings.  *See* R.C. 2981.05(C) and R.C. 2981.03.  And the prosecutor is required to attempt to identify "any person with an interest in the property subject to forfeiture" before or upon filing the civil action and to serve such individuals with notice of the action and the complaint.   R.C. 2981.05(B).  The prosecutor must also publish a notice of the action as provided by statute.  R.C. 2981.05(B).

{¶22}     According to the state, Frierson lacked standing to contest the forfeiture of the Mustang because it was titled in Vollmer's name at the time of the

seizure. Ohio's Certificate of Motor Vehicle Title Law provides in relevant part that "[n]o person acquiring a motor vehicle from its owner * * * shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle * * *." R.C. 4505.04(A).

{¶23}     As recognized by the Ohio Supreme Court, the main goal of Ohio's Certificate of Motor Vehicle Title Law is to protect innocent purchasers of motor vehicles. *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.*, 92 Ohio St.3d 513, 516, 751 N.E.2d 1019 (2001). *See also State ex rel. City Loan & Sav. Co. v. Taggert*, 134 Ohio St. 374, 375, 17 N.E.2d 758 (1938) (discussing predecessor to current statute that contained similar language.)   To that end, a change in ownership occurs when a certificate of title is issued in the name of the purchaser.

{¶24}     "Standing" involves "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Black's Law Dictionary* 1442 (8th Ed.2004). The party must have "some real interest in the subject matter of the action." *State ex rel. Dallman v. Court of Common Pleas*, 35 Ohio St.2d 176, 298 N.E.2d 515 (1973), syllabus, cited in *Wells Fargo Bank, N.A. v. Byrd*, 178 Ohio App.3d 285, 2008-Ohio-4603, 897 N.E.2d 722, ¶ 7 (1st Dist.).

{¶25}     The state cites two federal cases applying federal forfeiture statutes to demonstrate that Frierson's possession of the Mustang had not provided him standing. The courts in those cases, however, held that the claimants' possessory interests had confered Article III standing, but that the claimants had failed to establish their claims as "innocent owners" due to the application of the relevant state certificate of title laws.   *See United States v. One Lincoln Navigator 1998*, 328 F.3d 1011 (8th Cir.2003) (applying Arkansas law) and *United States v. 1977 Porsche Carrera 911*, 946 F.2d 30 (5th Cir.1991) (applying Texas law).

{¶26}     Ohio courts have held that Ohio's Certificate of Motor Vehicle Title Law has limited application beyond cases where the parties are rival claimants to

7

title. *See Saturn of Kings Automall*, 92 Ohio St.3d at 517-519, 751 N.E.2d 1019; *Smith v. Nationwide Ins. Co.*, 37 Ohio St.3d 150, 153, 524 N.E.2d 507 (1988).

{¶27} Specifically, the Ohio Supreme court has rejected the state's position that in a forfeiture action there can be no interest in a vehicle except as evidenced by the certificate of title. *State v. Shimits*, 10 Ohio St.3d 83, 85, 461 N.E.2d 1278 (1984). *See also State v. Wegmiller*, 88 Ohio App.3d 68, 623 N.E.2d 131 (8th Dist.1993) (holding that in a proceeding brought under a former forfeiture statute, the state can demonstrate the existence of an equitable interest in a vehicle that is then subject to forfeiture notwithstanding the Certificate of Motor Vehicle Title Law); *In re: 1990 LEXUS LUS VIN JT8UF11E7L001377 SEIZED FROM DARRICK BOSTON*, 1st Dist. No. C-990403, 2000 Ohio App. LEXIS 1344, 41 U.C.C. Rep. Serv. 2d (Callaghan) 337 (Mar. 31, 2000) (holding that perfection by possession under R.C. 1309.24 was sufficient to protect pawnshop's security interest against RENU's forfeiture of a vehicle, despite the language of the Certificate of Motor Vehicle Title Law.)

{¶28} Further, forfeitures are not favored in law or equity, and the statutory forfeiture provisions must be strictly construed against such a result. *See Dept. of Liquor Control v. Sons of Italy Lodge 0917*, 65 Ohio St.3d 532, 534, 605 N.E.2d 368 (1992); *City of Dayton Police Dept. v. Byrd*, 189 Ohio App.3d 461, 2010-Ohio-4529, 938 N.E.2d 1110, ¶ 28 (2nd Dist.).

{¶29} This case simply involves whether Frierson's interest in the Mustang had been acquired by proceeds. It does not involve competing claims of title and ownership. As soon as the state seized the Mustang as proceeds from Frierson's criminal behavior, the state took the position that Frierson had an interest in the Mustang, even though the interest fell short of legal ownership of the vehicle.

{¶30} We reject the state's position that Frierson lacked standing to challenge the forfeiture of the Mustang because he lacked legal ownership evidenced

by a certificate of title at the time of the seizure. Under these circumstances, Frierson had standing to contest the forfeiture and to request the return of the Mustang that he lawfully possessed at the time of the seizure and in which he had at least an equitable interest.

{¶31} Finally, the state failed to present any argument to support its claim that Frierson lacked standing to challenge the forfeiture of the tires, which were not attached to any vehicle at the time of seizure. Accordingly, the first assignment of error is meritless and we overrule it.

### III. Judicial Misconduct

{¶32} In its second assignment error, the state argues that the trial judge exceeded the bounds of the independent review of the magistrate's decision when she procured her own evidence and consulted an unsworn witness, whom the state could not cross-examine. We agree.

{¶33} In this case, the matter was referred to a magistrate for a forfeiture hearing, implicating Civ.R. 53. Frierson timely filed objections. When timely objections to a magistrate's decision have been filed, the trial court, in accordance with Civ.R. 53(D)(4)(d), "shall undertake an independent review" of the matters objected to in ruling on the objections. The independent review allows the trial court to confirm that the magistrate has properly determined the factual issues presented at the hearing and has applied the law correctly. Also, the trial court may "hear additional evidence," but "may refuse to do so unless the objecting party demonstrates that [it] could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." *Id.* If the court hears additional evidence, the court may call and interrogate witnesses in an impartial manner, and all parties are entitled to cross-examine those witnesses. *See* Evid.R. 614(A) and (B).

{¶34} The trial court clearly exceeded its authority under Civ.R. 53 and the rules of evidence when it contacted the clerk of courts and secured the updated

title and registration information for the Mustang. The court compounded this error by relying on this information in determining that Frierson had standing, without calling any witnesses into court and affording the parties the opportunity for cross-examination. But the trial court's error did not affect the substantial rights of the state. *See* Civ.R. 61.

{¶35} Rather, as we have already held, after our de novo review of R.C. 2981.05 and Ohio's Certificate of Motor Vehicle Title Law, Frierson's lack of legal ownership of the Mustang as evidenced by title at the time of the seizure did not deprive him of standing to challenge the forfeiture. Further, the state does not challenge the trial court's (and the magistrate's) finding that Frierson had not given any consideration for the Mustang—a fact that in this case leads to the legal conclusion that the Mustang was not subject to forfeiture as proceeds of drug trafficking. Ultimately, there was no showing or finding that the seized Mustang had any nexus with criminal activity. Thus, Frierson was entitled to the return of the Mustang that he had lawfully possessed before the state seized it.

{¶36} Therefore, although the trial court's misconduct was error, we hold that the error was harmless, and we overrule the second assignment of error. Accordingly, we affirm the trial court's decision denying the state's complaint for a civil forfeiture order pertaining to the Mustang and the tires and ordering a release of this property to Frierson.

{¶37} The judgment of the trial court is affirmed.

Judgment affirmed.

**DINKELACKER, P.J., HENDON** and **CUNNINGHAM, JJ.**

Please note:
The court has recorded its own entry on the date of the release of this decision.